FAY E. SAMS MONEY PURCHASE
PENSION PLAN, Appellant,

v.

Bryan C. JANSEN; Judy P. Jansen;
Roger C. Brown; United States of
America, Internal Revenue Service;
and Wickes Lumber Company, Appel-
lees.

No. 1997–CA–001153–MR

Court of Appeals of Kentucky.

Feb. 26, 1999.

Rehearing Denied April 23, 1999.

Discretionary Review Denied
by Supreme Court Nov. 10, 1999.

Scott T. Rickman, Morgan & Pottinger, P.S.C., Lexington, Kentucky, for appellant.

Kathryn Warnecke Lexington, Kentucky, for appellees Bryan C. Jansen and Judy P. Jansen.

Roger Brown, Clearwater, Florida, pro se.

No Brief for Appellee United States of America, Internal Revenue Service.

No Brief for Appellee Wickes Lumber Company.

Before COMBS, HUDDLESTON, and KNOPF, Judges.

## OPINION

KNOPF, Judge:

This is an appeal from a judgment rescinding a land sale contract and awarding damages to the purchaser. Finding no error, we affirm.

The trial court entered findings of fact, which the parties do not materially dispute. This Court adopts those findings as follows:

1. On October 12, 1987, the defendants, Bryan C. Jansen and Judy P. Jansen (hereinafter referred to as "the Jansens") executed a Contract for Deed (hereinafter referred to as "the land contract") whereby they promised to pay to the defendant, Roger C. Brown (hereinafter referred to as "Brown") and his wife the sum of $50,000.00 for the purchase of a parcel of real estate located at 2483 Woodhill Drive in Lexington, Kentucky. The land contract provided that after credit for a total down payment of $6,000.00, the Jansens were to pay to Brown and his wife the sum of $44,-000.00, plus interest thereon at the rate of 10.50% per annum, in 300 installments of $415.44 (plus an additional sum for taxes and insurance) each month beginning on November 1, 1987.

2. At the time of the execution of the land contract, said real property was subject to a first mortgage assumed by Brown and a second mortgage in favor of the Defendant the Fay E. Sams Money Purchase Plan. [the Sams Plan]

3. At the time of the execution of the land contract, the Jansens knew of the

existence of the first and second mortgages recorded against the Woodhill property.

4. Section (1) of the land contract provided that the final payment thereunder would be due on October 31, 2012. Section (12) of the land contract provided that Brown and his wife would deed the subject real estate to the Jansens, free and clear of all liens, upon the completion of the installment payments and that the property would not be encumbered for more than $40,000.00. Section (15) of the land contract provided that Brown and his wife would not place or cause to be placed on said property any liens, mortgages or other encumbrances.

5. On May 30, 1989, James and Rudy Snider recorded in the office of the Fayette County Clerk a Notice of Judgment Lien against all real property belonging to Brown.

6. On January 17, 1990, Brown and his wife assigned all of their interest in the land contract to the Sams Plan.

7. On February 27, 1991, the Internal Revenue Service recorded in the office of the Fayette County Clerk a Notice of Federal Tax Lien for an assessment of $33,212.00 plus interest and penalties against all property and rights to property belonging to Brown.

8. Upon discovery of these liens, the Jansens, by counsel, demanded of Brown by letter dated August 15, 1991 that he obtain releases of the IRS and Snider liens and deliver the original sale contract for recording in the Fayette County Clerk's Office.

9. The Jansens stopped making their payments under the land contract to Brown beginning with the payment due on September 1, 1991 and escrowed each payment in their attorney's trust account pending removal of the liens. The Jansens stopped making such payments into escrow in September 1992.

10. On October 8, 1991, Wickes Lumber Company recorded in the office of the Fayette County Clerk a Notice of Judgment Lien on Real Estate against all real property belonging to Brown.

11. Brown defaulted on the first mortgage to [Government National Mortgage Association (GNMA)] on August 1, 1991. On March 10, 1992, [GNMA] filed the within foreclosure proceeding.

12. By letter dated May 13, 1992, the Sams Plan, through its attorney, submitted a request to the IRS for discharge of the IRS lien, which request was subsequently denied. Brown also took certain actions to have the IRS lien released, none of which have been successful to date.

13. The Jansens vacated the subject real property on October 20, 1992.

14. On October 21, 1992, [GNMA] obtained the foreclosure judgment herein and the Woodhill property was sold by the master commissioner on November 16, 1992.

Based upon these findings of fact, the trial court made the following conclusions of law:

1. Brown "placed or caused to be placed" the federal tax lien and Wickes' judgment lien upon the subject real property within the meaning of the land contract.

2. It is irrelevant whether Brown had any interest in the subject real property to which the federal tax lien or the Wickes' judgment lien could attach because the unresolved legal issue of whether he did or did not have an interest created a cloud on title to the subject real property, making it unmarketable. No assurance was provided that the liens would be removed and, therefore, the Jansens' payments under the contract remained at risk.

3. It is likewise irrelevant whether the recording of the federal tax lien or of Wickes' judgment lien upon the subject real property was lawful because this

unresolved legal issue creates a cloud on title to the subject property.

4. The recording of the federal tax lien and of the Wickes' judgment lien on the subject real property constituted a breach of the land contract between Brown and the Jansens, and said breach was a substantial breach of the contract. By virtue of the terms of Section 12 and 15 of the contract, the Jansens did not contract to buy a lawsuit.

5. The substantial breach of the land contract justified the suspension of performance of the contract by Jansens and the Jansens acted reasonably in escrowing payments pending the requested release of the liens.

6. The extent of Brown's efforts to obtain a release of the federal tax lien or of Wickes' judgment lien is irrelevant.

7. The Jansens were justified in terminating the contract and are entitled to damages resulting from Brown's breach of contract.

Accordingly, the trial court entered a partial summary judgment in favor of the Jansens, declaring the land contract to be rescinded. The partial summary judgment was an interlocutory order. The trial court referred to the master commissioner the issues of whether the Sams Plan was entitled to any compensation from the Jansens for their occupancy of the property after their termination of payments, and whether the Jansens were entitled to a judgment against the Sams Plan or Brown for recovery of sums expended in performance of the contract and damages.

Following an evidentiary hearing, the master commissioner concluded that the trial court's rescission of the land contract precluded the Sams Plan's recovery from the Jansens. The master commissioner likewise found that the Jansens had no right to recovery against the Sams Plan. Ultimately, the master commissioner recommended that the Jansens be allowed a judgment against Brown for their monthly payments made, for the down payment made, and for pre-judgment interest on the down payment. Against that sum, the master commissioner recommended that Brown be allowed a credit of $27,000.00.

The trial court adopted the master commissioner's report, and entered a judgment dismissing the Sams Plan's claims against the Jansens, and the Jansens' claims against the Sams Plan. The trial court awarded the Jansens a judgment against Brown in the amount of $21,120.44, being the total amount of payments they made pursuant to the land contract; and in the amount of $3,500.00, being the amount of their down payment under the land contract, plus prejudgment interest on the $3,500.00 at the rate of eight percent (8%) per annum from October 12, 1987, until April 16, 1996; and in the amount of $1,124.72, being the cost of materials used by the Jansens in making certain repairs to the property; plus postjudgment interest at the rate eight percent (8%) per annum until paid. Against this amount, the trial court gave Brown a credit of $27,000.00, being the stipulated reasonable rental value of the property during the period in which it was occupied by the Jansens.

The Sams Plan now appeals from this judgment. Brown also filed a cross-appeal, naming the Sams Plan, the Jansens, and the lienholders as cross-appellees. However, this Court refused to accept his cross-appellant's brief because it exceeded the page limitation. CR 76.12(4)(b)(i). Subsequently, this Court dismissed the cross-appeal. Brown's response brief in the direct appeal also does not comply with the page limitation. Nonetheless, Brown essentially makes the same arguments as the Sams Plan. We will consider his brief to the extent that his arguments are related to those presented by the Sams Plan.

The Sams Plan argues that the trial court erred in finding that the filing of the liens constituted a breach, substantial or otherwise, of the land contract. Consequently, the Sams Plan contends that the Jansens were not entitled to recission of

the land contract and termination of payments. Rather, the Sams Plan argues that the Jansens were in breach of the contract and that it was entitled to judgment against them for damages for their breach. In the alternative, the Sams Plan argues that there were material issues of fact which precluded summary judgment, and that it was entitled to a jury trial on these issues.

 It is elementary that a contract may not be rescinded unless the non-performance, misrepresentation or breach is substantial or material. Generally, courts do not favor rescission, which will not be permitted.... The court does not look lightly at rescission, and rescission will not be permitted for a slight or inconsequential breach. *Evergreen Land Co. v. Gatti,* Ky. App., 554 S.W.2d 862, 865 (1977). This Court must first decide whether the filing of the liens constituted a breach of the land contract, and if so, whether the breach was so substantial as to justify recission of the land contract.

Both the Sams Plan and Brown argue that the land contract was not breached because Brown did not intentionally encumber the property. They contend that the "place or cause to be placed" language in Section (15) of the land contract implies some affirmative action on Brown's part in placing the liens on the property. The parties agree that there is no controlling Kentucky authority on this question.[1]

 Nonetheless, interpretation of contracts is an issue of law for the court to decide. *Morganfield National Bank v. Damien Elder & Sons,* Ky., 836 S.W.2d 893, 895 (1992). The cardinal rule of contract interpretation is that all words and phrases in the contract are to be given their ordinary meanings. *O'Bryan v. Massey–Ferguson, Inc.,* Ky., 413 S.W.2d 891 (1966). The basic principle followed in the construction of deeds is to determine the intention of the grantor as gathered from the four corners of the instrument. *Gabbard v. Short,* Ky., 351 S.W.2d 510, 511 (1961). Generally, a deed must be construed more strongly against the grantor and more favorably to the grantee. *Id.*

In Section (12) of the land contract, Brown specifically agreed not to encumber the property for more than $40,000.00, which was the total of the first and second mortgages. In Section (3), the parties state their understanding that the Jansens' monthly payments to Brown would be used to ervice the first mortgage on the property and to pay the actual insurance and taxes charged to Brown by the lender of the first mortgage. Clearly, the parties understood that any further encumbrance of the property would place the Jansens' payments at risk and could precipitate a default on the first mortgage by Brown. To this end, Section (15) prohibited either party from placing or causing encumbrances on the property.

Based upon these considerations, we agree with the trial court that Section (15) prohibits the filing of involuntary or judgment liens against the property. This interpretation is consistent with the parties' intention to avoid any disruption in the payments under the contract and the servicing of the underlying mortgages. Furthermore, Brown's failure to record the land contract caused the liens to be filed against the property.

---

1. In support of its position, the Sams Plan cites *Lodge v. Capital Insurance Co.,* 91 Iowa 103, 58 N.W. 1089 (1894). In *Lodge,* the Supreme Court of Iowa interpreted a provision in a fire insurance policy which voided the contract "if encumbrance be placed" on the property. The Iowa court held that this language implied some affirmative act on the part of the insured, such as the execution of a mortgage or other lien, and not such a lien as may be placed upon the property by operation of law. *Id.* at 1090. However, the Iowa court noted that "[c]ourts are not disposed to construe these restrictions and limitations in insurance policies more liberally than is required from the language used, and thereby defeat what otherwise appear to be honest claims for indemnity against loss". *Id. Lodge* is distinguishable by its age, and by the fact that it interprets an insurance policy.

■ Both the Sams Plan and Brown next argue that the trial court should have looked to whether the liens filed against the property were valid before finding a breach of the land contract. Brown conveyed his equitable interest in the property to the Jansens in 1987, and he conveyed his legal interest in the property to the Sams Plan in January 1990. They contend that Brown had no interest in the property to which the liens could attach. Since the liens filed against the property were invalid, the Sams Plan and Brown assert that no breach occurred.

■ The issue of the validity of the IRS lien is not clear. An IRS lien attaches to "all property and rights to property, real or personal, belonging to such person." I.R.C. § 6321. The taxpayer's "rights to property" are to be determined under state law. *Aquilino v. United States*, 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–81 4 L.Ed.2d 1365, 1368–69 (1960). There is a split of authority concerning whether an IRS lien may attach to property which the taxpayer previously conveyed by unrecorded instruments. The Fifth Circuit held that the United States was a creditor under the Texas recording statute, and that tax liens attached to property conveyed by the taxpayer by unrecorded instruments. *Prewitt v. United States*, 792 F.2d 1353 (5th Cir., 1986); *United States v. Creamer Industries, Inc.*, 349 F.2d 625 (5th Cir., 1965). The First, Eighth, and Tenth Circuits reached contrary conclusions, holding that by filing a tax lien, the IRS is not acting as a creditor, but rather it steps into the taxpayer's shoes. Consequently, the tax lien may only reach that property in which the taxpayer actually has a right. *United States v. Gibbons*, 71 F.3d 1496

(10th Cir., 1995) [applying Colorado law]; *Thomson v. United States*, 66 F.3d 160 (8th Cir., 1995) [applying Minnesota law]; and *United States v. V & E Engineering & Construction Co., Inc.*, 819 F.2d 331 (1st Cir., 1987) [applying Puerto Rico law].

■ Under a contract for deed, the seller retains legal title to the property until the buyer has paid the contract price, while equitable title passes to the buyer when the contract is entered. *Sebastian v. Floyd*, Ky., 585 S.W.2d 381, 382 (1979). In January 1990, Brown assigned his "bare" legal title to the property to the Sams Plan. However, the land contract was not recorded until at least October 1991, and there is no indication in the record that the land contract assignment from Brown to the Sams Plan was ever recorded. Thus, at the time the IRS filed the lien against the property, there was no recorded instrument which would have put lienholders on notice of the Jansens' interest in the property.

■ If the IRS steps into the shoes of Brown's creditors, then the lien may be valid. In the absence of actual or constructive knowledge the proper recording of a lien statement constitutes perfection of the lien and establishes its priority over subsequently recorded liens or statements. *Tile House, Inc. v. Cumberland Federal Savings Bank*, Ky., 942 S.W.2d 904, 906 (1997); citing, KRS 376.010(2). On the other hand, if the IRS lien merely attaches to property in which Brown had a right, then the lien may have been declared invalid. Unfortunately, this issue could not have been resolved without considerable litigation.[2]

2. We also note KRS 382.270, which provides: No deed or deed of trust or mortgage conveying a legal or equitable title to real property shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed or mortgage is acknowledged or proved according to law and lodged for record. As used in this section "creditors" includes all creditors irrespective of whether or not they have acquired a lien by legal or equitable proceedings or by voluntary conveyance.

Even assuming that the IRS lien attached only those interests which Brown actually possessed, the Snider and Wickes liens still posed a potential threat to the Jansens' equitable interest in the property.

We fully agree with the trial court that the Jansens "did not contract to buy a lawsuit." At the very least, the Jansens' unrecorded equitable interest in the property was placed in considerable risk by the filing of the IRS and Wickes' liens. Furthermore, the trial court noted that the IRS and Wickes both refused to release their liens against the property. Moreover, Brown's default on the second mortgage to GNMA, prior to the Jansens' suspension of payments, further imperiled their interest in the property. The foreclosure proceedings prevented a complete consideration of the validity of the liens. Consequently, the ultimate validity of the liens was not relevant because of the risk they posed to the Jansens' equitable interest and to their future payments under the contract.

The Sam's Plan and Brown argue that even if the filing of the liens constituted a technical breach of the land sale contract, recission of the contract and termination of payments was not the appropriate remedy. They point out that the contract did not give the Jansens a right of prepayment. They assert that Brown was not obligated to tender clear title to the property until after the Jansens had completed performance under the contract. Consequently, they contend that the Jansens have not been harmed by the filing of these liens.

The parties devote considerable argument to the question of whether a purchaser in an installment land sale contract has a right to prepay where the agreement is silent. Although Kentucky law is not clear on this point, this Court does not find that the issue is relevant. The Jansens brought this action for breach of Section (15) of the land sale contract, which provides, in pertinent part, that "[n]either Vendor(s) nor Vendee(s) shall place or cause to be placed on said property any liens, mortgages or other encumbrances."

It is important to note that Section (15) is not a warranty provision. Section (12) is actually the warranty provision, setting out that Brown shall convey to the Jansens "good and sufficient warranty deed", when the Jansens have completed payment. Rather, Section (15) is a contractual provision prohibiting either party from encumbering the property during the term of the agreement. A breach of this provision occurred with the filing of the liens against the property.

Both the Sam's Plan and Brown contend that the Jansens used the existence of the liens as an excuse to avoid purchasing a piece of property which had become undesirable to them. However, the Jansens' motivation is not relevant unless they were the first party to breach the contract. A party who commits the first breach of a contract is deprived of the right to complain of a subsequent breach by the other party. *West Ky. Coal Co. v. Nourse*, Ky., 320 S.W.2d 311, 315 (1959). The liens were filed long before the Jansens consulted an attorney to consider their options under the land contract. Furthermore, Brown defaulted on his mortgage payments to GNMA before the Jansens began making their payments into escrow. Even assuming that the Jansens desired to terminate the land contract, Brown's substantial breach of the agreement entitled the Jansens to suspend their performance.

Therefore, as a matter of law, the trial court acted properly in granting summary judgment to the Jansens and rescinding the contract. Based upon the undisputed facts and the law, the trial court correctly determined that Brown's breach of the land contract was substantial. Given the risk which the breach posed to the Jansens' equitable interest in the property, they were justified in suspending their monthly payments to Brown.

In the alternative, the Sams Plan contends that it was entitled to recover from the Jansens for their occupancy of the property during the period of time in which they suspended their payments under the contract. The Sams Plan relies upon Brown's assignment of the land con-

tract to it in January 1990. However, as assignee, the Sams Plan has no greater rights in the land contract than Brown assigned to it. The effect of recission of the land contract is not only to terminate it, but to abrogate it and undo it from the beginning. 17A Am.Jur.2d *Contracts* § 539, p. 551. With the recission of the land contract, Brown's assignment of his legal interest to the Sams Plan was also invalid. Consequently, the Sams Plan acquired no rights from Brown and must seek recovery against him for its damages.

Furthermore, even assuming that the assignment was valid, the Sams Plan acquired no greater rights against the Jansens than Brown would have. Brown retained substantial obligations under the land contract, even after the assignment. Most notably, Brown was still under a duty to service the first and second mortgages. In relying upon Brown to perform these duties, the Sams Plan is likewise bound by his actions in allowing the land contract to be breached. Thus, the result would be the same as that which the trial court reached. The only difference would be that the Jansens would be entitled to recover against the Sams Plan rather than Brown. Since Brown's cross-appeal was dismissed, this relief is not available and we decline to alter the trial court's judgment.

Accordingly, the judgment of the Fayette Circuit Court is affirmed.

All concur.