RENDERED:  DECEMBER 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0872-MR

ROBERTO J. FELIX                                                                                       APPELLANT

v.
APPEAL FROM BELL CIRCUIT COURT
HONORABLE ROBERT COSTANZO, JUDGE
ACTION NO. 18-CI-00238

MELISSA RIVERA                                                                                           APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:   Roberto Felix appeals from the Bell Circuit Court's orders regarding the distribution of a portion of his military retirement pay and failure to make the reduction of his child support payments retroactive.  He also argues that the circuit court erred by not allowing him to appear telephonically at a hearing given that he resided in Puerto Rico.

We reverse the orders which denied Felix's motion to participate telephonically in the court's initial hearings, awarded a faulty amount of Felix's

retirement pay to be distributed and, thus, awarded an erroneous amount of child support and remand with instructions to make both awards retroactive.

Felix and Melissa Rivera were married on May 16, 1995, in Puerto Rico. They had two children, one of whom was still a minor during the events on appeal. Twelve years later, the parties were domiciled in New Mexico where Rivera filed for divorce in 2007. The parties entered into a Stipulated Marital Settlement Agreement which was filed on April 29, 2008. The agreement created a full settlement of all property, visitation, child support obligations, and retirement benefit issues and was incorporated into a final decree by the court in New Mexico on September 25, 2008.

In relevant part, as part of the property division, Felix was to pay Rivera a portion of his future military retirement pay. The pertinent part of that portion of the settlement agreement is:

> The former spouse [Rivera] is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is 160 months of marriage during the member's creditable military service – 240 months. The former spouse is awarded 33.3 percent of the member's military retired pay. Should respondent serve beyond 240 months Defense Finance and Accounting Systems (DFAS), will adjust this percentage downward accordingly by military law, and this Order shall in no way be construed or interpreted to conflict with military law and DFAS regulations.

The DFAS referenced in the agreement is the federal agency which processes court-ordered garnishments for military retirees who are themselves being paid by the Defense Finance and Accounting Service.

Following the graduation of their oldest child from high school in 2015, the New Mexico court modified Felix's original child support obligation and Felix was ordered to pay $871.00 per month to Rivera for support of the remaining minor child. Rivera later moved to Bell County, Kentucky.

On June 8, 2018, Felix retired from active duty, after 282 months (23.5 years) of service. Upon retirement, Felix's income dropped, and he began receiving $2,735.43 per month in gross retirement pay. Other than Felix testifying by affidavit that he spoke to Rivera in May 2018 and told her to send DFAS "the appropriate paperwork," there is no record of either party making any attempts prior to Felix's retirement to have DFAS either calculate or process the required post-retirement payments to Rivera in accord with their agreement.

In July 2018, Rivera filed a verified petition for registration and enforcement of a foreign child custody order and marital settlement in Bell Circuit Court. Felix was residing in Puerto Rico where the parties had married.

On August 6, 2018, Rivera supplemented her filing with a motion for registration and enforcement seeking enforcement of both a prior child support

award of $871.00 per month and "33.3 percent of [Felix's] monthly military retired pay."

Without conducting a hearing, on August 27, 2018, the circuit court entered an order, tendered by Rivera, which stated that Felix was to pay child support in the amount of $871.00 per month as provided in an August 24, 2015 order entered in New Mexico, and "awarded 33.3 percent of Respondent's monthly military retired pay" to Rivera. In 2019, Rivera filed her first motion to hold Felix in contempt for failing to abide by the circuit court's order.

Felix, *pro se*, filed a response opposing Rivera's motion citing that he was now, after retirement, making much less money and attached a retiree account statement showing his retirement pay as $2,735.43 (gross pay) and $2,557.17 (taxable income) and asserted that Rivera had not yet completed the paperwork necessary for her to obtain her portion of his retirement.

Felix also filed a *pro se* motion for telephonic hearing. The circuit court denied Felix's motion to appear telephonically.

The circuit court conducted a hearing on October 14, 2019. Felix was not present and not allowed to participate telephonically. The circuit court took proof from Rivera. Upon inquiry by the circuit court, Rivera's counsel advised that her application to DFAS for payment from Felix's retirement was "in the process" and "pending."

On December 18, 2019, the circuit court entered its findings of fact, conclusions of law, and order which found Rivera in contempt for failing to pay the full award of child support and held that "[Rivera] was and is awarded $910.89 Per month from [Felix's] retired military pay for the months beginning in July, 2018 through October, 2019."

This was the first time any court or agency had made a calculation of the monthly amount of Felix's retirement to which Rivera was entitled. The circuit court made its computation by simply multiplying $2,735.43 (the sum listed as "gross pay" on the retiree account statement provided by Felix) by 33.3%.

Felix retained counsel who filed her appearance on December 23, 2019, together with a motion for a new trial or, in the alternative, to alter, amend, or vacate the prior contempt order. All subsequent pleadings were made through counsel. Felix's counsel argued the circuit court erred in its decision regarding the division of his retirement benefits and that its finding of contempt was inappropriate.

At the hearing regarding this motion on January 13, 2020, Felix's counsel informed the court on the record that the "percentage was wrong" regarding the retirement benefits since Felix had served for more than 240 months (he had served for 282 months) prior to his retirement and therefore the court's calculation was incorrect.

On February 7, 2020, the circuit court granted Felix's motion regarding its prior contempt finding but made no changes in its determination that Rivera was owed 33.3% of Felix's retirement pay.

On February 26, 2020, Felix filed a motion to modify his child support obligation because the previous amount from the New Mexico court was based on Felix's income while he was working. Felix also argued that the parties had previously worked out an agreement after he retired that he would pay $457 in child support a month and argued that he was entitled to a lower child support obligation post-retirement than the $871 the circuit court had previously ordered.

By an order entered March 9, 2020, the circuit did reduce Felix's child support obligation to $394 per month based upon his post-retirement income, with this reduction made retroactive to February 26, 2020, when Felix's counsel filed his motion to modify his child support obligation.

A June 10, 2020 order, which denied Kentucky Rules of Civil Procedure (CR) 59.05 relief, finalized the previous orders.[1] Felix then appealed.

Felix argues that: (a) the circuit court's calculations with regard to Rivera's portion of his retirement were incorrect and in disregard of both Kentucky and federal law; (b) because the initial award of child support was incorrect, when

---

[1] Felix previously tried to appeal from the December 18, 2019 order following the February 7, 2020 denial of his CR 59 motion, but that appeal was premature.

it was reduced such reduction should have been retroactive to the initial award in Kentucky; and (c) the circuit court's refusal to allow Felix to participate by telephone when he was acting *pro se* was arbitrary and an abuse of discretion. Rivera did not file an appellee brief in this appeal.[2]

We discuss Felix's third argument first as it relates to whether the circuit court's subsequent rulings are valid. Felix argues that the circuit court abused its discretion in denying his request to appear telephonically in this matter when he was acting *pro se*.

The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. 5 Am.Jur.2d *Appellate Review* § 695 (1995); *cf. Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky. 1994). Applying this test, we conclude that the circuit court abused its discretion in denying Felix the opportunity to appear telephonically given the specific circumstances present here.

---

[2] In accord with the CR 76.12(8)(c):

> If the appellee's brief has not been filed within the time allowed, the court may: (i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

We have determined to accept appellant's statement of facts and issues as correct, which is the least serious of the penalties provided by rule. However, in many respects that is no penalty at all in this case where the facts appear to be largely uncontested and the issues revolve around questions of law and not fact.

Felix was a retired veteran residing outside the continental United States in Puerto Rico. There is no evidence that he had ever been in Kentucky. His only known income was his retirement. The circuit court needed to be mindful not only of the logistics of his travel, but of the parties' financial resources. Requiring Felix to fly to an airport in either Kentucky or Tennessee, rent a car, drive to remote Bell County, obtain lodging, and then have to return to Puerto Rico, all for a short hearing with only limited issues was an abuse of discretion which was unfortunately compounded by the incorrect orders subsequently issued by the circuit court.

While it would not be necessary or even prudent to allow all litigants to avoid appearances in court and this Court generally remains deferential to the discretion of lower courts in the conduct of their proceedings, this is a rare case in which the circuit court abused its discretion in prohibiting Felix from participating through alternative means. Even pre-COVID, when video and telephonic conferencing was less prevalent, it should not have been difficult for the circuit court to have allowed Felix to listen, and participate, at least by speaker phone.

Next, we consider Felix's main argument, that the circuit court erred in its calculation of how much of his retirement was due Rivera prior to DFAS divvying up his retirement benefits and acting to distribute Rivera's portion of those future monthly payments to her. In considering this issue, we are mindful of

the fact that the circuit court and our Court are both bound by the parties' original settlement agreement.

Settlement agreements "are a type of contract and therefore are governed by contract law[.]" *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (citation omitted). Absent an ambiguity in the contract, it will be "enforced strictly according to its terms[.]" *Id.* at 106 (citation omitted). In negotiating the terms of a marital settlement agreement, "the parties may settle their affairs *with a finality beyond the reach of the court's continuing equitable jurisdiction* elsewhere provided." *Brown v. Brown*, 796 S.W.2d 5, 8 (Ky. 1990) (emphasis added).

Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review.[3] *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992); *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000); *Fay E. Sams Money Purchase Pension Plan v. Jansen*, 3 S.W.3d 753, 757 (Ky. App. 1999). "Any contract or agreement must be

---

[3] Neither party has provided any New Mexico authority which would conflict with our Commonwealth's caselaw regarding the interpretation of contracts and marital settlement agreements. Being aware of no fundamental differences, we apply both Kentucky's standard of review and our own precedent.

construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986).

The parties' arms-length agreement, originally accepted by the New Mexico court in its decree, should have been recognized as "final" on the issue of Rivera's entitlement to a portion of Felix's military retirement. The initial portion of the settlement agreement which addresses the percentage of Felix's retirement pay which was awarded to Rivera states:

> The former spouse [Rivera] is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is 160 months of marriage during the member's creditable military service – 240 months.

Therefore, Rivera's percentage would be calculated as:

Disposable Military retired pay = $X

$X \times .5$ x 160 months of marriage / 240 months of service

$X \times .5$ x .666

$X \times$ **.333**

That very calculation is solved for in the next clause of the agreement which states: "The former spouse is awarded 33.3 percent of the member's military retired pay." If Felix had retired at exactly 240 months, Rivera's agreed

upon award would have been one-third of Felix's "disposable military retired

pay."[4]  However, the settlement agreement further provides:

> Should respondent serve beyond 240 months Defense
> Finance and Accounting Systems (DFAS), will adjust
> this percentage downward accordingly by military law[.]

Therefore, the parties agreed that Rivera was not to be awarded any

portion of Felix's retirement which was earned or accrued following 240 months of

service.  This makes logical sense as the retirement he would earn for additional

service would not be marital.  The parties did not provide a method for a court to

determine exactly how Felix's subsequently earned retirement would be excluded

and instead agreed to defer to DFAS to make such a calculation, so that Rivera

would receive an appropriate distribution of her marital share of Felix's retirement.

It is well established that a former spouse is not entitled to any portion

of a service member's non-marital retirement pay, as was discussed in *Snodgrass*

*v. Snodgrass*, 297 S.W.3d 878, 887-88 (Ky. App. 2009):

> If a service member has not yet become eligible for
> retirement, any division of the *gross* retired pay will
> mean that the percentages of the nonmarital and marital
> portions will shift over time subsequent to the decree.
> The nonmarital percentage of the retired pay will
> necessarily increase and the marital portion decrease.
> Therefore, absent the service member's agreement, such

---

[4] The term in the agreement, "disposable military retired pay," is not defined in the agreement and not necessarily the same amount as Felix's "gross retirement pay" which was used by the circuit court in its calculation.

-11-

> a division will necessarily become unjust as a function of mathematics.
>
> . . .
>
> Lisa is not entitled to share in any of the nonmarital portion of Guy['s] retired pay. *See Foster v. Foster*, 589 S.W.2d 223, 225 (Ky. App. 1979) (non-pensioner spouse "not entitled to share in any pension benefits earned after divorce and before retirement[.]"); *McGinnis v. McGinnis*, 920 S.W.2d 68, 71 (Ky. App. 1995) ("value of a pension, if any, should therefore be marital property for the portion accrued during coverture"), quoting *Poe v. Poe*, 711 S.W.2d 849, 855 (Ky. App. 1986). Since we presume the lower court followed the law, *see Hilen v. Hays*, 673 S.W.2d 713, 717 (Ky. 1984), we conclude the decree did not intend to award Lisa 46% of the entirety of Guy's military retired pay, nonmarital and marital alike.

In *Snodgrass*, the Court was faced with DFAS misinterpreting a judgment award and thus calculating a sum that was not in comportment with the decree. Here it was the circuit court that made a calculation contrary to the decree.

While we know that the circuit court's calculation was incorrect, we are still left with determining what actual percentage of Felix's retirement should be awarded to Rivera. The answer is found in the parties' agreement giving deference to DFAS to make the needed calculations consistent, rather than in conflict "*with military law and DFAS regulations.*"

Since this Court had not been informed of DFAS's computations,[5] and otherwise being without the necessary information to mathematically quantify Rivera's share, we too must defer to DFAS's initial calculations before we could even attempt to determine if such DFAS generated figures are in comportment with both the law and the decree as we did in *Snodgrass*.

This does not mean that the circuit court was without recourse in ensuring that Rivera received her agreed upon percentage of Felix's retirement. The circuit court's attempt to fashion what it considered to be a fair remedy in this circumstance may have seemed facially logical but was premature and unsupported. Had there been a showing that Felix had intentionally thwarted or delayed Rivera's attempt to acquire her share of the retirement benefit, or that Rivera's financial condition required some interim payment, the circuit court might have taken temporary measures as necessary to ensure that Rivera would not go wanting or otherwise be financially damaged. However, in this matter, there is no such evidence.

Given that Rivera's award was part of the parties' property settlement agreement, and not maintenance, deference should have been given to the DFAS to first compute Rivera's monthly award, and then the circuit court could have

---

[5] Given that Rivera's application to DFAS was "in the process" and was "pending" as far back as October, 2019, we expect that it has at least generated its calculations by the time of this Opinion.

ordered Felix to pay to Rivera a lump sum (or make periodic payments) to compensate her for the amount of the retirement benefits he previously received which were due Rivera. Any payments ordered and paid prior to DFAS's calculations are subject to revision as Rivera had no right to any amounts in excess of what was provided for in their settlement agreement.

Felix's final argument is that the circuit court's initial calculation of child support was "manifestly unjust" since it used Felix's pre-retirement income in its calculations, and he was entitled to a retroactive adjustment back to August 27, 2018, when the circuit court first ordered him to pay $871 a month in child support. We agree.

A trial court enjoys "broad discretion in the establishment, enforcement, and modification of child support." *Bjelland v. Bjelland*, 408 S.W.3d 86, 87 (Ky. App. 2013). Accordingly, we review child support matters under an abuse of discretion standard, and we will only disturb the trial court's findings of fact if they are clearly erroneous. *Id.* An abuse of discretion will only be found when a trial court's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Bell v. Bell*, 423 S.W.3d 219, 222 (Ky. 2014).

The circuit court, in the initial stage of the litigation, determined to enforce the last order regarding child support found in the record from the New Mexico court. What was not considered, since Felix was not allowed to participate

-14-

telephonically, is that he and Rivera had allegedly already agreed to what Felix would pay in child support following his retirement. Parties have the power to orally modify child support, and courts have the power to recognize such agreements when proven with certainty, they are fair and equitable, and if they would have been reasonably granted had modification been sought. *See Price v. Price*, 912 S.W.2d 44 (Ky. 1995). Had the court inquired as to the parties' oral agreement but determined not to enforce it, the initial child support order would still be erroneous as it utilized Felix's pre-retirement income figures which were obviously no longer correct. Felix is correct that he was entitled to have his child support obligation modified after he retired and his income significantly declined.[6]

Accordingly, we reverse and remand the Bell Circuit Court's orders regarding the child support and retirement benefits awarded to Rivera. Furthermore, this matter will be stayed pending DFAS's determination regarding Rivera's awarded portion of Felix's retirement benefits. Once DFAS has made its determination, if either party objects to DFAS's computation, then in that event the circuit court will only attempt to modify DFAS's award by entering written findings setting forth both the legal and factual reasons why DFAS's determination

---

[6] Subsequent changes to Felix's and Rivera's incomes once Felix's retirement is distributed pursuant to the DFAS's calculations could make further modification of prospective child support appropriate. *See* Kentucky Revised Statutes (KRS) 403.213(2) (discussing presumptions regarding modification of child support based on changes to income).

-15-

was incorrect or not in comportment with the parties' marital settlement agreement *and* the circuit court's authority to order a modification of DFAS's award. Subsequent to DFAS's determination, and based upon how that determination affects both parties' respective incomes, child support shall be calculated and made retroactive to the date of the filing of Rivera's initial petition in Bell County.

ALL CONCUR.


BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE FILED.

Jennifer F. Nagle
Keith A. Nagle
Middlesboro, Kentucky