*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LEXICON, INC.,

> *Plaintiff-Appellant,*

*v.*

No. 04-6086

SAFECO INSURANCE COMPANY OF AMERICA, INC.,
> *Defendant-Appellee.*

———————————

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 02-00068—Joseph M. Hood, Chief District Judge.

Argued: September 16, 2005

Decided and Filed: February 9, 2006

Before: KENNEDY, COOK, and GRIFFIN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Michael D. Strong, LATHROP & GAGE, L.C., Kansas City, Missouri, for Appellant.
Gregory J. Berberich, GOTTESMAN & ASSOCIATES, Cincinnati, Ohio, for Appellee.
**ON BRIEF:** Michael D. Strong, Michael P. O'Shea, LATHROP & GAGE, L.C., Kansas City,
Missouri, Robert M. Connolly, STITES & HARBISON, Louisville, Kentucky, for Appellant.
Gregory J. Berberich, GOTTESMAN & ASSOCIATES, Cincinnati, Ohio, J. Thomas Mellott,
STATMAN, HARRIS, SIEGEL & EYRICH, Cincinnati, Ohio, for Appellee.

KENNEDY, J., delivered the opinion of the court, in which COOK, J., joined. GRIFFIN,
J. (pp. 11-14), delivered a separate opinion concurring in part and dissenting in part.

———————————

## OPINION

———————————

KENNEDY, Circuit Judge. Lexicon Inc. (Lexicon), a sub-contractor of Icon, Inc. (Icon),
seeks recovery of self-styled "delay and impact claims" from Safeco Insurance Co. of America, Inc.
(Safeco), the surety of Icon, under a labor and material payment bond. The district court determined
that any claims asserted by Lexicon against Safeco not based on labor and material costs caused by
delay are not recoverable under the bond. It further held that a settlement agreement that
purportedly settled contractual claims between Lexicon and Icon precluded Lexicon from recovering
from Safeco on the payment bond, granted summary judgment to Safeco, and dismissed the action.
For the reasons that follow, we affirm the district court in part, reverse it in part, and remand to the
district court for further proceedings.

1

## BACKGROUND

North American Stainless, L.P. (NAS) entered into an agreement with general contractor SMS Demag Co. (SMS) to expand a melt shop and casting facilities at NAS's stainless steel plant in Kentucky. Joint Appendix (J.A.) at 34. SMS entered into a subcontract with Icon to perform equipment installation and commissioning services. *Id.* at 150-51, 342, 919-20. Pursuant to its agreement with SMS, Icon provided a payment bond for which Safeco served as surety. *Id.* at 920.

The Labor and Material Payment Bond provided that any "claimant" who has not been paid in full within ninety days after the date on which it performed labor or work, or furnished materials to the project, may sue either Icon or Safeco. *Id.* at 146. The Bond defines a "claimant" as "one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract." *Id.* The Bond did not define "work," "labor," or "materials," other than to indicate that "labor and material [are] construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment directly applicable to the Contract." *Id.*

Icon hired Lexicon as a sub-contractor and gave it the responsibility of erecting and installing certain equipment. *Id.* at 191-267, 920. During Lexicon's performance of the sub-contract, it encountered numerous delays through no fault of its own, *id.* at 622, which resulted in substantial cost overruns. *Id.* at 129, 378, 390-95. After Lexicon submitted a letter requesting that Icon declare Lexicon's work "substantially complete," *id.* at 381, Lexicon submitted a written claim on January 18, 2002, advising Icon of the problems and extra expenses caused by delays. *Id.* at 386. The letter sought an equitable adjustment to the contract. *Id.*

On March 8, 2002, again in a letter, Lexicon provided Icon with further details with respect to its claims. *Id.* at 388-415. This letter covered all of its outstanding claims against Icon. *Id.* at 383, 388-89. First, Lexicon sought payment for the outstanding contract balance. *Id.* at 388-89, 396. Second, Lexicon sought compensation for "extra work authorizations" (EWAs). *Id.* The EWAs were agreed-upon additions to the contract work that the parties had negotiated during construction. *Id.* Finally, Lexicon sought payment for what it termed "cost impacts that Schueck Steel has suffered on the North American Stainless project . . . due to the action or inaction of other companies, including, but not limited to, Icon, SMS, and NAS or their subcontractors."[1] *Id.* at 388. On September 3, 2002, Icon and Lexicon settled some of Lexicon's claims. *Id.* at 147-48. Specifically, Paragraph One of the written settlement agreement recited that Icon paid Lexicon $1,500,000 "in full and final settlement of Lexicon's pending contract claims, including contract balances and approved EWAs." *Id.* at 147. Paragraph four of the settlement agreement, however, preserved: "Lexicon's delay and impact related claims and Lexicon's right and ability to pursue such claims." *Id.* at 148. Paragraph four also indicated that the "delay and impact related claims . . . shall not be included [in] the settlement referenced in paragraph 1." *Id.*

On July 15, 2002, Lexicon commenced an action against Safeco, Icon's surety, in the United States District Court for the Eastern District of Kentucky. *Id.* at 5. SMS commenced an action against NAS on July 25, 2002. *Id.* at 35, 53. That action was sent to arbitration. *Id.* Icon, by agreement of NAS and SMS, was joined as a third-party to the SMS-NAS arbitration. *Id.* at 41-42. Upon a motion by both parties, the district court stayed this action twice pending the result of the SMS-NAS-Icon arbitration. *Id.* at 34-36, 44-45. While Lexicon was not a party to the arbitration, Icon did submit Lexicon's claims to the arbitrators as evidence of amounts for which it might be liable and for which it, therefore, sought to recover so as to meet that obligation.

---

[1]For reasons that the record does not make clear, Lexicon did business as Schueck Steel for the purposes of this project.

Lexicon subsequently obtained relief from the stay, *id.* at 6, and filed a first amended complaint against Safeco. *Id.* at 21-26. In its complaint, Lexicon argued that the labor and material bond issued by Safeco to Icon required Safeco to pay Lexicon for the delay and impact damages that were exempted from Icon and Lexicon's settlement agreement. *Id.* at 21-24. The parties filed cross-motions for summary judgment. *Id.* at 153-60.

Additionally, during discovery, Lexicon sought access to a document Lexicon believed contained representations from Safeco to Icon indicating Safeco's belief that if Icon passed-through Lexicon's claims to the general contractor during its arbitration with NAS and SMS, the claims would be covered as an "extra" by the bond, thereby making Safeco liable for the claims. *Id.* at 821-23. Safeco had earlier provided its privilege log and produced the alleged privileged documents to a magistrate judge pursuant to the district court's order. *Id.* at 911, 914-15. Lexicon moved to strike Safeco's privilege log because it asserted that the log was not sufficiently detailed. *Id.* at 813. The magistrate judge had made no ruling on this issue at the time the case was dismissed.

The district court awarded Safeco summary judgment. *Id.* at 927. The district court first decided that the issue of whether delay and impact claims are recoverable was dependent on the language of the specific bond. *Id.* at 925-26. Based on that holding, the court determined that Lexicon had not offered sufficient descriptions of its "delay and impact claims." *Id.* at 925. The district court indicated that Lexicon's submissions with respect to those claims did not specifically identify those claims, nor did they separate out labor and material costs from other costs or damages that a company might incur in the completion of a contract. *Id.* at 925-26. The district court noted that such costs could be:

> lost profits from other jobs foregone in order to remain at work on a project for an extended period of time, the cost of contacting other parties about delaying work on other projects, the expense of hiring additional workers to cover other projects because a normal workforce is tied up in a project under contract, the cost of additional insurance for those workers, etc.

*Id.* at 926-27. The district court then held that "to the extent that the 'delay and impact claims' comprise expenses collateral to the labor and material actually used on the Project, they do not fall into the category of items recoverable under a payment bond for 'labor and material used or reasonably required for use in the performance of the contract.'" *Id.* at 927. Thus, the district court determined that expenditures made on things other than specific labor or materials necessary for the completion of the project were not recoverable under the bond.

The district court then assumed, for the purposes of deciding Safeco's motion for summary judgment, that all of the delay and impact claims were for labor and materials used or reasonably required for use in the performance of the contract. It held that even under that assumption, the partial settlement agreement between Icon and Lexicon terminated Safeco's liability. *Id.* at 927-28. The district court reasoned that because the settlement agreement included a "full and final settlement of Lexicon's pending contract claims," any remaining claims would have to be, by definition, extra-contractual. *Id.* Because extra-contractual claims were not covered by Safeco's bond, the district court held that Safeco was entitled to summary judgment. *Id.*

On appeal, Lexicon asserts that the district court erred in several important respects. First, Lexicon argues that the district court ignored important evidence detailing its delay and impact claims. In particular, Lexicon points to a letter, dated March 8, 2002, it sent Icon that provided details about its claims for extra expenses required because of delay. *Id.* at 388-414. Lexicon also points to an invoice Icon submitted to SMS. *Id.* at 500. Both the letter and the invoice were attached to its memorandums in opposition to summary judgment filed with the district court. Lexicon argues that this evidence was sufficient to establish that its claims were for extra labor and

materials necessary to complete the project and required because of delay and, that being so, that there is evidence in the record that it is making a claim for labor and materials under the bond. Thus, Lexicon argues that Safeco was not entitled to summary judgment.

Lexicon also disputes the district court's conclusion that the settlement agreement had settled all Lexicon's claims related to the contract. Lexicon argues that the district court should not have relied on this ground as a basis for summary judgment because Safeco first raised the argument in its reply brief, so that Lexicon did not have a chance to respond to it. Lexicon asserts that the settlement agreement should be read to except "delay and impact claims" from the settlement agreement, not because those claims are extra-contractual, as the district court held, but because those contractual claims were still in dispute between the parties.

Lexicon also argues that the district court improperly credited it with drafting the settlement agreement. This issue is still relevant, Lexicon argues, because if the court finds the settlement agreement ambiguous, it should find that both parties are drafters of the agreement so as not to construe the agreement against one party or the other. Finally, Lexicon argues that the district court should not have ruled on Safeco's summary judgment motion without first ruling on Lexicon's motion to strike Safeco's privilege log. The privilege log was relevant, Lexicon argues, because had Lexicon been able to defeat Safeco's assertion of privilege and discover some of the documents listed on the log, Lexicon believes that those documents would show that Safeco knew that Icon's attempt to pass through Lexicon's claims to SMS during the arbitration would convert those claims into extras due under the bond.[2]

Safeco, in contrast, argues that claims for delay are not compensable under its bond. Safeco relies on various cases that have held that claims for delay are not recoverable under labor and material bonds. Safeco then argues that the district court properly determined that the settlement agreement eliminated any contract-based claims Lexicon may have had against Safeco. Safeco also disputes Lexicon's arguments with respect to the privilege log and the district court's reference to Lexicon having drafted the settlement agreement.

## ANALYSIS

A.      Standard of Review

This court reviews a grant of summary judgment *de novo*. *Frazier v. Honda of Am. Mfg. Co.,* 431 F.3d 563, 565 (6th Cir. 2005). For the purposes of this appeal, we construe the evidence in the light most favorable to Lexicon and draw all reasonable inferences in its favor. *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Granting summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

B.      Delay Claims

The district court determined that, in general, claims for delay can be compensable under a bond if the language of the bond allows for recovery of delay claims. On appeal, Lexicon agrees with the district court's finding that some delay claims may be compensable under a bond and

---

[2]Indeed, in the district court, Lexicon appeared to argue that since Icon had submitted Lexicon's claim to the arbitrator as a part of its claim against the general contractor and owner on the basis that Lexicon was claiming those charges as due to delay, the submission amounted to Icon's and, thus, Safeco's, recognition of the validity of Lexicon's claim under the bond.

argues that its exhibits attached to its response to Safeco's motion for summary judgment establish that its claims on the bond are for labor and materials necessary for the completion of the project caused by delays. Safeco argues that damages for a breach of contract are not compensable under a payment bond and that impact claims are similar to breach of contract claims, which are broader than labor and material.

The rule with respect to whether delay claims are recoverable under a payment bond appears to be that labor and material costs caused by delay can be recovered under a payment bond. *Mai Steel Servs. Inc. v. Blake Constr. Co.*, 981 F.2d 414, 418 (9th Cir. 1992) (The court limited the plaintiff's recovery to "out-of-pocket labor and material costs.");[3] *see also Tremack Co., v. Homestead Paving Co.,* 582 So. 2d 26 (Fla. Dist. Ct. App. 1991). Recovery for all labor and material costs, costs incurred, damages for delay not related to labor and materials, or for damages for breach of contract, may not be recovered. *See U.S. ex rel. E. & R. Constr. Co., v. Guy H. James Constr. Co.*, 390 F. Supp. 1193, 1244 (M. D. Tenn. 1972) ("[T]he subcontractor[] does have a remedy against the surety for the recovery of the value of labor and materials supplied by him in the prosecution of the work covered by such a bond, even though they were required by reason of the breach or default of said prime contractor . . . ." Although the court also held that "[d]amages based on misrepresentation and delays are not within the legislative intent of 40 U.S.C. §§ 270(a)- 270(b)," and that "[a] subcontractor is not entitled to recover from the surety for losses suffered due to delays growing out of the acts or omissions of others.") (internal citations and quotations omitted); *U.S. ex rel. Edward E. Morgan Co., v. Md. Cas. Co.*, 147 F.2d 423, 425 (5th Cir. 1945); *L.P. Friestedt Co. v. U.S. Fireproofing Co.*, 125 F.2d 1010, 1012 (10th Cir. 1942) ("We know of no case that has gone so far as to hold that one may recover damages for breach of a contract on a bond required under the Heard Act."). Thus, in general, if a bond guarantees payment of labor and materials, a sub-contractor may recover for additional labor and materials expenses caused by delay under the bond, but a sub-contractor may not recover for other non-labor or materials expenses or damages, nor may a party recover for a breach of contract under the bond.

Because labor and material expenses caused by delay can, in general, be compensable, the language of the bond must be evaluated to determine if the bond itself provides limits on a sub-contractor's rights of recovery. The bond in this case guaranteed payment "for all labor and material used or reasonably required for use in the performance of the Contract." J.A. at 146. The district court found that Lexicon had only vaguely described "the nature of the recovery" it sought. *Id.* at 925. According to the district court, Lexicon did not identify the "specific instances of labor and material for which it seeks payment under the bond." *Id.* at 926. Instead, the district court, quoting Lexicon, found that Lexicon sought generic damages for things like administrative expenses and lost profits, neither of which would be covered under Safeco's labor and materials bond.[4] *Id.* Because Lexicon refused, as far as the district court understood, to enumerate its claimed labor and material expenses in any detail, the district court found that, "to the extent that the 'delay and impact claims' comprise expenses collateral to the labor and material actually used on the Project, they do not fall into the category of items recoverable under a payment bond for 'labor and material used or reasonably required for use in the performance of the contract.'" *Id.* at 927.

We are sympathetic with the district court's apparent frustration. Lexicon is apparently reluctant to spell out exactly what monies it claims are still due for labor and material costs under

---

[3] Although many of the cases cited in this opinion deal with Miller Act payment bonds, or the state equivalent of the Miller Act, neither party has offered a good reason why Miller Act cases are not, at the very least, persuasive in determining how the term labor and material in a common law payment bond should be interpreted, especially when neither party can cite to Kentucky common law authority on the question.

[4] Those damages could probably, however, be awarded if Lexicon sued Icon for breach of contract and won.

the bond.[5] We also agree with the district court that insofar as Lexicon asserts that it is due more than labor and material costs caused by delay, Safeco deserves summary judgment under the bond on those claims. We, therefore, affirm that portion of the district court's ruling.

When filing its claim under the bond, J.A. at 415, Lexicon broke its delay and impact claims down into three sections: (1) caster area, (2) fume control/material handling area, and (3) EAF/AOD equipment area. *Id*. at 418. Lexicon explained that the effect of late plant equipment deliveries had the largest impact: "Maintaining a 45-man crew for the added seven months at sixty-hour workweek [sic] would add over eighty thousand man-hours to the project without any significant completion of our contractual obligations." *Id*. at 420.

Hours of labor resulting from keeping the job manned by Lexicon at these levels seems hardly labor required to complete the project. Nor does Lexicon's addition of a 12% profit. Indeed, the contract between Lexicon and Icon setting out the hourly wages for Lexicon employees states that those wages included overhead and profit, among other items.

Nor does Lexicon's method of determining its claim by stating its estimate of what is should have cost in labor to do the job, and what it actually expended appear to be a measure of the hours necessary to complete the contract caused by delay. If Lexicon estimated the cost at ten hours for a job that ended up taking twenty hours on the scale that we see in Lexicon's claim here, bonding companies would end up paying for the contractors' too low bids. While that may be what happens when a job is not completed and the sub-contractor is judgment proof, here the contract was completed.

Implicit in the court's ruling is the recognition that a portion of Lexicon's claims may be claims for labor and material costs necessary to complete the project that were caused by delay. It is unclear whether in this portion of the district court's opinion it is granting Safeco summary judgment on those claims because Lexicon has failed to make that claim. The only place in its opinion where the district court clearly grants summary judgment on all labor and material claims appears further on in the opinion when the district court rules that the settlement agreement unambiguously settled all contract based claims. We turn now to that ruling.

C.          The settlement agreement

Lexicon argues that the district court should not have granted summary judgment on the basis of the settlement agreement between Lexicon and Icon, as Safeco never argued that the settlement agreement eliminated all obligations it had under the bond. Lexicon complains that because Safeco did not argue the point, Lexicon did not have an adequate chance to respond. It asserts that the district court should not have used the settlement agreement as a basis for awarding summary judgment because its terms are ambiguous or, alternatively, if the agreement is not ambiguous, the district court has misinterpreted it because the agreement unambiguously reserves contract-based delay and impact claims under the bond. Finally, Lexicon argues that the district court improperly found that Lexicon drafted the settlement agreement.

---

[5] Apparently, Lexicon was reluctant or unwilling to limit its recovery from Icon for all its delay and other damages.

As a preliminary matter, because we review the grant of motions for summary judgment de novo, any error by the district court in granting Safeco's summary judgment without giving Lexicon an opportunity to respond to Safeco's arguments is harmless.[6] FED R. CIV. P. 61.

As to Lexicon's other arguments, the Kentucky Court of Appeals has found that: "Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to de novo review." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,* 94 S.W.3d 381, 385 (Ky. Ct. App. 2002) (citing *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000); *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992); *Fay E. Sams Money Purchase Pension Plan v. Jansen*, 3 S.W.3d 753, 757 (Ky. Ct. App. 1999)). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Id.* (citing *Transp. Ins. Co. v. Ford,* 886 S.W.2d 901, 905 (Ky. Ct. App. 1994); *Luttrell v. Cooper Industries, Inc.,* 60 F.Supp.2d 629, 631 (E. D. Ky. 1998)). Finally, ". . . once a court determines that a contract is ambiguous, areas of dispute concerning the extrinsic evidence are factual issues and construction of the contract become subject to resolution by the fact-finder." *Id.* (citing *Cook United, Inc. v. Waits*, 512 S.W.2d 493, 495 (Ky. 1974); *Reynolds Metals Co. v. Barker*, 256 S.W.2d 17, 18 (Ky. 1953); *Lagrew v. Hooks-SupeRx*, 905 F.Supp. 401, 404 (E. D. Ky. 1995).

In this case, the district court determined that the settlement agreement precluded any contractual recovery because all contract-based claims were settled based on the parties' agreement in paragraph one of the settlement to a "full and final settlement of Lexicon's pending contract claims." J.A. at 167. In so reasoning, the district court relied on the maxim of *expressio unius est exclusio alterius* - the expression of one thing is an intention to exclude all others. *Id*. at 927-28. The district court then reasoned that if all contractual claims were settled and the bond only provided recovery for contract-based claims, any claims remaining would have to be extra-contractual and, hence, not covered by the bond. *Id.*

If the phrase in paragraph one of the settlement agreement were the only relevant phrase, the district court would undoubtedly be correct. Paragraph four of the agreement, however, indicates that "Lexicon's delay and impact related claims and Lexicon's right and ability to pursue such claims (and Icon's defenses which are specific to such claims) are specifically preserved and shall not be included or encompassed in . . . the settlement referenced in paragraph 1." This additional term complicates the inquiry, as one reading of paragraph four could encompass an intention to specifically reserve a portion of the settlement contract claims otherwise settled in the "full and final settlement" of the contract claims. Thus, the district court's interpretation of the contract is not necessarily correct.

---

[6]The concurrence would not address Safeco's arguments on this point, because Safeco failed to properly preserve those arguments. Con. Op. at 4-6, n.3. We fail to see how an issue of preservation or waiver is raised in this case. First, the district court fully addressed Lexicon's concerns in its order denying Lexicon's Motion to Alter, Amend, or Vacate the Judgment. J.A. at 970-75. *See also id.* at 947-54. In addition, both parties fully briefed the issue before this court. Finally, as a procedural matter, parties are not limited to one summary judgment motion because "[d]istrict courts may in their discretion permit renewed or successive motions for summary judgment, particularly when the moving party has expanded the factual record on which summary judgment is sought." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th Cir. 2000). *See also Whitford v. Boglino,* 63 F.3d 527, 530 (7th Cir.1995) ("[T]he denial of summary judgment has no *res judicata* effect, and the district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist."). Thus, if this court declined to address the merits of the parties' argument at this stage, no principle of waiver or preservation would prevent Safeco from raising the argument below in a successive summary judgment motion. In light of that fact, judicial economy requires that this court address the merits of the arguments raised by the parties at this stage of the litigation, rather than forcing the parties to raise it with the district court anew on remand.

Lexicon's alternative position, that the contract unambiguously reserves contract based claims, is also fraught with difficulties, however. The settlement agreement uses the term "delay and impact claims." Such a term does not appear to be a term of common usage, nor is there any evidence in the record that this court could locate that the term is a common one in construction contracts. Nor do the parties point to any document or testimony in the record that describes the term prior to its use in the settlement agreement. Additionally, while evidence in the record may allow a fact-finder to infer that both parties understood "delay and impact claims" to mean those claims for labor and materials needed for the completion of the contract due to the delay of other parties, *see id*. at 386-414, there is also evidence in the record that delay and impact claims could encompass a broader set of claims for delay than just those for labor and materials under the contract. *See id*. (the letters and reports do not differentiate between claims under the contract and extras; moreover, the reports detail extra costs for site overhead and corporate and division overhead).

Because Lexicon's complaint, argument, and evidence do not differentiate between the amounts Icon owes it for extra-contractual work or for monies due under the contract not related to labor and materials (e.g. profit), it is possible that reservation of delay and impact claims in the settlement between Icon and Lexicon could be for claims unrelated to labor or materials under the contract. It would, therefore, seem that the settlement agreement could refer to an intent to reserve contractual claims for labor and materials, contractual claims for amounts other than labor and materials, extra-contractual claims, or some combination thereof. The settlement agreement, therefore, appears to be ambiguous under Kentucky law because "a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc.*, 94 S.W.3d at 385. Thus, under Kentucky law, a fact-finder must determine the meaning the parties to the agreement (Icon and Lexicon) intended. *Id*.

Finally, because the settlement agreement appears to be ambiguous, it may be relevant which party drafted it, as some Kentucky case law indicates that an agreement must be construed against the drafter. *See, e.g.*, *Home Folks Mobile Homes, Inc. v. Meridian Mut. Ins. Co.*, 744 S.W.2d 749, 750 (Ky. Ct. App. 1987). Lexicon argues that the district court made an impermissible finding of fact that Lexicon drafted the agreement. It is not at all clear, however, whether the district court ever made a finding of fact that Lexicon drafted the agreement, as the district court specifically held that it was irrelevant who drafted the agreement. *Id*. at 971-72 n.1. In addition, it is not clear that the record contains sufficient evidence to rule one way or another on this point. For instance, Lexicon references an affidavit as evidence that the agreement was extensively negotiated by both parties. *Id*. at 448. The settlement agreement is on the letterhead of the law firm representing Lexicon and appears to make a settlement offer on behalf of Lexicon to Icon. *Id*. at 167-68. As a result, because it is unclear whether the district court ruled on this point at all, and because ambiguities in the record preclude a conclusive determination as to who drafted the settlement agreement, a decision on this point will need to be made by the district court or, if necessary, the fact-finder on remand.

Thus, the district court's grant of summary judgment to Safeco on Lexicon's labor and material cost delay claims was in error. We must, therefore, remand those claims to the district court for further fact-finding on at least two issues. First, what is the proper interpretation of the settlement agreement? Second, does Lexicon make a claim under the bond for labor and material costs related to delay? We note, finally, the limited extent of our ruling in this case. Although we reverse the district court's grant of summary judgment, a future grant of summary judgment is not foreclosed if Lexicon does not carry its burden.

D.      Recovery Under the Bond

If the court's opinion intended to grant summary judgment to Safeco on the grounds that there was no evidence that Lexicon was making a claim for labor and materials under the bond, it

is reversed. Lexicon points to several documents in the record including letters sent to Icon on March 8, 2002, which provided a breakdown of the then-disputed costs and extras; an exhibit Icon submitted in the SMS-NAS separate arbitration detailing Lexicon's claims against it; and the affidavit of Lexicon's project manager. These documents, we believe, were sufficient to raise a jury issue that part of Lexicon's claims were covered by the bond. Lexicon has, however, the obligation to identify the evidence in the record that supports its claim for labor and material costs under the bond. *Matsushita*, 475 U.S. at 587.

We note that, at this stage, however, Lexicon has not conclusively proved its case. Indeed, while Lexicon referred to its claim as a claim for damages, the term damages sufficiently incorporates costs associated with labor and materials as well as other damages Lexicon suffered as a result of Icon's breach of contract that would not be covered by the bond. Similarly, the reports only describe the difference between the hours allocated to hours in bidding the contract and the labor actually expended.[7]

Lexicon should not expect the district court or a fact-finder to sift through the record to identify evidence in support of its claims. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403-407 (6th Cir. 1992). Especially in a case as complicated as this one, Lexicon must make the evidence of its claims explicit. *Id.* While Lexicon urges us to grant summary judgment in its favor, it has not argued for any sum except the full amount of its delay and impact claim. It is apparent that its "delay and impact claim" is broader than the labor and material provision of the bond. The case is remanded for further proceedings on the issue of the settlement agreement; and, depending on the outcome of that issue, for a determination of whether either party is entitled to summary judgment on the remaining issues not addressed by the district court's or this court's rulings.

E.     The Privilege Log

Finally, Lexicon argues that the district court should not have ruled on Safeco's motion for summary judgment before it ruled on Lexicon's motion to strike Safeco's privilege log. As a general rule, a district court should rule on discovery motions prior to granting summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986) ("[W]here the nonmoving party has not had the opportunity to discover information that is essential [to its position, summary judgment should be denied].")). If the settlement issue is not dispositive of the case, we agree that the court should dispose of the privilege issue before ruling on Safeco's motion for summary judgment as some of the documents could very well have helped Lexicon's theory of the case. *See id.*

The court in this case ordered Safeco to submit both a privilege log and the privileged documents to the court for in camera review, and Safeco provided both the log and the documents to a magistrate judge. J.A. at 911, 914-15. Lexicon filed its motion to strike the privilege log before the magistrate judge in this case ruled on Safeco's assertion of privilege. *Id.* at 915. Presumably, because the magistrate judge did not rule on whether the documents in question were privileged before the district court granted summary judgment to Safeco, a ruling has never been made on Safeco's assertion of privilege with respect to those documents. Because the court has the documents in question, it may be able to rule on the assertion of privilege regardless of whether the privilege log provides sufficient information to Lexicon.

---

[7]Both the January and the March letters to Icon include claims for all costs Icon owed Lexicon at the time, but the August settlement means that some of those claims are likely no longer at issue. Without further explanation, or a detailed parsing of the record, a fact-finder would have difficulty separating out the settled claims from the non-settled claims.

Under the precedent cited above, however, the district court should wait to grant summary judgment until a decision is made with respect to whether the documents are privileged. Thus, although Lexicon's motion was not well-fashioned, the principle underlying its motion is sound. Thus, unless the case is disposed of on the settlement issue, the court should rule on the privilege claim before granting summary judgment.

## CONCLUSION

For the foregoing reasons, this court **AFFIRMS** the district court's judgment in part, **REVERSES** the district court's judgment in part, and **REMANDS** for further proceedings.

---

### CONCURRING IN PART, DISSENTING IN PART

---

GRIFFIN, Circuit Judge, concurring in part and dissenting in part. I concur in the result of the majority opinion, which reverses in part the grant of summary judgment in favor of defendant Safeco Insurance Company ("Safeco"). I write separately to express my differences with both the remedy and portions of the majority's analysis.

I.

At the outset, I am not persuaded that Kentucky common law recognizes "delay and impact" claims as a separate form of contract recovery. To resolve this issue, I would not use Miller Act cases in my analysis. (Opinion at 5 n.3.) Given that the Miller Act provides a *federal* cause of action,[1] *see United States v. Fidelity & Deposit Co. of Md.,* 813 F.2d 697, 700 (5th Cir. 1987) ("The Miller Act provides a federal cause of action, and the extent of the limitation period must be determined in accordance with federal law." (citation omitted)), I would decline to apply the logic of the Miller Act in the context of a private common law payment bond, *e.g., Mai Steel Serv., Inc. v. Blake Constr. Co.*, 981 F.2d 414, 420 (9th Cir. 1992) ("Claims arising under its common law payment bond are therefore governed by state, rather than federal, law." (citation omitted)); *United States ex rel. Doten's Constr., Inc. v. JMG Excavating & Constr. Co.*, 223 F.R.D. 17, 18 (D. Me. 2004) (dismissing claim for lack of federal question jurisdiction because bond under which litigant sought recovery was a common law bond rather than a Miller Act bond). On this point, although Safeco dedicates several pages to a detailed discussion of Miller Act caselaw, it nonetheless agrees that Miller Act cases are of limited value. Accordingly, I would not rely on Miller Act cases in the context of a private common law payment bond.

More pointedly, although the parties submitted a variety of documents reflecting the parties' and district court's considerable discussion of delay and impact claims, the issue appears illusory. The cases cited by the parties and the majority do not demonstrate that "delay and impact damages" arise from a pre-existing legal construct. Instead, they are but words utilized by Lexicon to describe the alleged damages that arose from Project delays. The district court's opinion tacitly acknowledges this reality in its opinion when, after reviewing the varied cases supplied by the parties, it merely surmises that "recovering delay or acceleration damages under a payment bond turns on the language of the bond and the nature of the recovery sought."

The majority also appears to acknowledge that delay and impact claims are not a separate form of contractual recovery. Indeed, the majority notes that Lexicon seeks recovery of "self-styled" delay and impact claims, (Opinion at 1), then concedes that the term "delay and impact" "does not appear to be a term of common usage," (Opinion at 8). Thus, I would conclude that there is no need to separately examine whether Kentucky common law provides for the recovery of "delay and impact" damages. Instead, I would simply analyze the issue as one of ordinary contract interpretation: whether Lexicon's March 8, 2002, claims for payment are encompassed by the language of the Bond.

Moreover, I respectfully disagree with the majority's statement that "[w]e are sympathetic with the district court's apparent frustration" that Lexicon is "reluctant to spell out exactly what monies it claims are still due for labor and material costs under the bond." (Opinion at 6.) The

---

[1] Notably, Lexicon did not seek to invoke the district court's federal question jurisdiction. Instead, Lexicon commenced this litigation pursuant to 28 U.S.C. § 1332.

record evidence wholly contradicts that statement.[2]　Indeed, the record reflects that Lexicon submitted a written claim on January 18, 2002, pursuant to the Subcontract's claim procedure, advising Icon of the problems caused by project delays and seeking an equitable adjustment to the contract. Lexicon followed up on March 8, 2002, by providing Icon with a more detailed explanation of the "actual man-hours and cost[s] expended" as a result of the Project delays. In pertinent part, the March 8 report detailed Lexicon's claims for "delay and impact" costs, which Lexicon defined as "extra out-of-pocket costs for labor and material expended in completing the work in the Subcontract, caused by inefficiencies, hindrances, and related impacts." Lexicon later submitted a more detailed analysis, which further analyzed the delay costs attributable to extra man-hours, equipment costs, and overhead.

It is undisputed that Safeco received these materials. Icon forwarded Lexicon's detailed March 8, 2002, report to Safeco for its review on April 10, 2002. Icon even marked up the $2,962,274 damages sum detailed in the March 8 analysis when it "passed through" Lexicon's claim and presented it against SMS during its arbitration with SMS. Moreover, it is further undisputed that the district court possessed these materials when ruling on Safeco's summary judgment motion. Accordingly, I conclude that the district court had sufficient evidence regarding Lexicon's delay and impact claims. Again, however, the question is whether that evidence demonstrates that Lexicon's March 8 analysis sets forth recoverable sums pursuant to the Bond. Because a genuine issue of material fact exists on this question, I would remand for trial.

## II.

I also respectfully disagree with the majority's analysis of the parties' Settlement Agreement. First, I note that the majority declines to address Lexicon's argument that whether the Settlement prevented it from pursuing its delay claims was not an issue that was properly preserved.[3] Significantly, Safeco, in proffering its motion for summary judgment, did not argue that the language of the parties' Settlement barred Lexicon from pursuing its delay claims against Safeco. Instead, a review of the "argument" section of Safeco's summary judgment brief reveals that it primarily argued that delay and impact claims are not covered by the language of the Bond.

---

[2]This statement likewise appears to be contradicted by a later portion of the majority's opinion itself. Specifically, the majority later notes:

> If the court's opinion intended to grant summary judgment to Safeco on the grounds that there was no evidence that Lexicon was making a claim for labor and materials under the bond, it is reversed. Lexicon points to several documents in the record including letters sent to Icon on March 8, 2002, which provided a breakdown of the then-disputed costs and extras; an exhibit Icon submitted in the SMS-NAS separate arbitration detailing Lexicon's claims against it; and the affidavit of Lexicon's project manager.

(Opinion at 8-9.) Crediting Lexicon for submitting a "detailed" breakdown of costs and extras does not appear consistent with the majority's previous statement that Lexicon is "reluctant to spell out exactly what monies it claims are still due for labor and material costs under the bond." *Id*. at 10.

[3]The majority instead notes that, because we review the grant of summary judgment de novo, "any error by the district court in granting Safeco's summary judgment without giving Lexicon an opportunity to respond to Safeco's arguments is harmless." (Opinion at 7.) The error, however, is hardly harmless given that it provided the district court with a ground upon which to grant summary judgment. More importantly, the issue is not one of harmless error, but rather one of preservation. Assuming a district court properly declines to consider an issue raised for the first time in a reply brief, *e.g., Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671, 682-83 (E.D. Mich. 2002) (noting, in the context of summary judgment, "it is not the office of a reply brief to raise issues for the first time" (citation omitted)), that issue remains unpreserved for appellate review, *cf. Novosteel SA v. United States*, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002) (holding that raising an issue for the first time in summary judgment reply brief does not suffice to preserve issue for appellate review). A de novo standard of review does not excuse a party's obligation to fairly present each of its issues at every stage in the proceedings.

Nowhere, however, did Safeco assert that the Settlement prohibits Lexicon's delay claims. To the contrary, Safeco spent a full paragraph explaining that such claims are all that remain after the parties' Settlement. Only after Lexicon filed its response did Safeco argue, in its reply brief, that the terms of the Settlement preclude Lexicon from asserting delay claims against Safeco. In doing so, it termed Lexicon's characterization of its claims as "contract-based" and argued that, if indeed the claims are based on the parties Subcontract, then such claims were resolved by the Settlement. Given that "[i]t is impermissible to mention an issue for the first time in a reply brief because the appellee then has no opportunity to respond," *United States v. Jerkins*, 871 F.2d 598, 602 (6th Cir. 1989) (internal citation and quotation marks omitted), I would not address the issue because it was not properly preserved.

Second, I respectfully disagree with the majority's analysis governing who drafted the parties' Settlement Agreement.[4] As discussed above, the import of who drafted the Settlement Agreement is insignificant because the issue was not properly before the district court. Even if it were properly raised and preserved for appellate review, I would decline to reach the issue because it does not impact the fundamental inquiry necessary for resolution in this case: whether Lexicon's March 8, 2002, claims for payment are encompassed by the language of the Bond.

III.

Finally, I am concerned that the majority fails to mention or discuss the existence of two significant issues of material fact: (1) the date upon which Lexicon reached substantial completion of its role in the Project; and (2) whether Lexicon complied with the notice provision of the Bond.

On these points, I note that the Subcontract provides a contractual completion date of March 23, 2001, but likewise provides a mechanism by which the parties could alter the completion date. For example, the Subcontract provides that "[t]he time for performing the Work is established by the requirements and milestone dates set out in the Master Project Schedule *with mutually agreed durations*." The district court made no finding with regard to (1) whether the parties' "mutually agreed durations" altered Lexicon's time for substantial completion, or (2) when Lexicon *actually* completed its work on the project. Significantly, the parties dispute when Lexicon fulfilled its obligations pursuant to the Subcontract. Thus, the existence of these material fact issues prevents us from determining when Lexicon was obligated to provide the notice required by the Bond.[5]

For the foregoing reasons, I would reverse the district court's entry of summary judgment because of its failure to first rule on Lexicon's motion to strike Safeco's privilege log before resolving the parties' summary judgment motions. *See Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 667 (6th Cir. 2005) ("Generally, a district court should dispose of motions that affect the record on summary judgment before ruling on the parties' summary judgment motions." (citation omitted)). I would likewise reverse the district court's entry of summary judgment and

---

[4] Also, I do not understand what significance the Settlement Agreement has on the wholly separate question of whether the court improperly ruled on the parties' summary judgment motions without first ruling on Lexicon's pending motion to strike Safeco's privilege log. Although I agree with the majority's statement of the basic rule that a district court should not consider the parties' summary judgment motions before ruling on any pending discovery motions, I do not agree with the majority's subsequent suggestion that such a rule is somehow altered in this case "[i]f the settlement issue is not dispositive of the case[.]" (Opinion at 9.) Such a statement is particularly confusing given that the majority appears to recognize that the Settlement Agreement preserved Lexicon's delay and impact claims. (Opinion at 7.)

[5] The Bond requires a claimant to provide notice of non-payment "within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed."

remand for trial because genuine issues of material fact remain concerning: (1) the date upon which Lexicon reached substantial completion of its role in the Project; (2) whether Lexicon complied with the notice provision of the Bond; and (3) if so, whether the Bond would allow Lexicon to recover the sums detailed by Lexicon's March 8, 2002, report.