RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0269p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CENTRAL STATES, SOUTHEAST & SOUTHWEST
AREAS PENSION FUND; HOWARD MCDOUGALL,
            *Plaintiffs-Appellants/Cross-Appellees,*

            *v.*

GENERAL MATERIALS, INCORPORATED, dba
Wholesale Materials Company,
            *Defendant-Appellee/Cross-Appellant.*

Nos. 07-1392/1473

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-73593—John Corbett O'Meara, District Judge.

Argued: April 23, 2008

Decided and Filed: July 30, 2008

Before: DAUGHTREY, COOK, and FARRIS, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Albert M. Madden, Rosemont, Illinois, for Appellants. Richard C. Lindsey, Jr., MARCOUX, ALLEN, ABBOTT, SCHOMER, BOWER, NICHOLS, KENDALL & LINDSEY, P.C., Jackson, Michigan, for Appellee. **ON BRIEF:** Albert M. Madden, Rosemont, Illinois, for Appellants. Richard C. Lindsey, Jr., MARCOUX, ALLEN, ABBOTT, SCHOMER, BOWER, NICHOLS, KENDALL & LINDSEY, P.C., Jackson, Michigan, for Appellee.

---

## OPINION

---

COOK, Circuit Judge. Plaintiff Central States Pension Fund (the "Fund") and a representative trustee appeal the district court's grant of summary judgment for defendant employer General Materials ("General") on the Fund's claim for overdue pension payments. We affirm, holding that General's duty to contribute to the Fund ended with the expiration of the collective bargaining agreement ("CBA") referenced in the correlating Participation Agreement.

---

[*]The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

## I. BACKGROUND

### A.

General is a small, family-owned lumberyard in Jackson, Michigan. The Fund is an ERISA "multiemployer plan," 29 U.S.C. § 1002(37), that collects pension contributions under labor agreements between employers and local unions. In 1969 General entered into the first of several CBAs with Local 164. These CBAs set pay scales and provided for union dues, welfare payments, and pension-fund payments. When signing each CBA, General and Local 164 also signed a Participation Agreement drafted by the Fund that remained substantively the same from contract to contract.

The Participation Agreement included provisions that incorporated and relied on the CBA's terms. For example, the Participation Agreement bound General to the Fund's Trust Agreement, which required each employer to "remit continuing and prompt contributions to the [Fund] as required by the applicable *collective bargaining agreement*." Under paragraph 5(a) of the Participation Agreement, General would contribute a set amount for a set period "for its bargaining unit Employees pursuant to the terms of the *collective bargaining agreement*." Paragraph 6 provided that payments would be made "only on behalf of employees in the *collective bargaining unit*." Under paragraph 13, the Participation Agreement defined an "Employer" and "Employee" in terms of their responsibilities under the CBA.

Pursuant to the Participation Agreement, General reported the work history of eligible employees and paid monthly contribution invoices that contained a clause (the "Certification Clause") stating that General "hereby reaffirms [its] obligation to make contributions *required by the Collective Bargaining Agreement* and further represents that all employees eligible to participate in the Fund . . . are being reported . . . ." The Participation Agreement also provided that it would "continue in full force and effect" absent written notice of termination.

From 1969 until 1991, these CBAs and Participation Agreements required General to make monthly pension contributions to the Fund on behalf of its union employees. General and Local 164 signed the CBA and Participation Agreement relevant to this case on December 17, 1991 (respectively, the "1991 CBA" and the "1991 Participation Agreement"). By its terms, the 1991 CBA expired on December 31, 1993, and would "continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served *by either party upon the other* at least sixty (60) days prior to the date of expiration." JA 509 (emphasis added). On October 21, 1993, General sent Local 164 a certified letter notifying the union that General intended to terminate the 1991 CBA. All parties concede that General did not notify the Fund itself of termination until this litigation began.

When the 1991 CBA expired on December 31, 1993, General had only two union employees, James Smith and Roy Swihart. Although General continued to contribute to the Fund for Swihart and Smith—under an alleged oral agreement with Local 164—it entered into no other CBAs or Participation Agreements but instead instituted its own pension and profit-sharing plan, contributing to that plan for its non-union employees.

### B.

After General rebuffed the Fund's attempted audit by providing only Swihart's records, the Fund filed a complaint for overdue contributions. General then sent a written request to the Fund's Trustees, asking for a refund of the contributions it paid on behalf of Swihart and Smith after the 1991 CBA expired. The Trustees denied the request and General filed a counterclaim for the refund.

Both sides filed motions for summary judgment, and the Fund then filed a Federal Rule of Civil Procedure 37(c)(1) motion to strike portions of General's response to the Fund's motion for summary judgment. After a hearing, without discussing the motion to strike, the district court held that the parties' conduct suggested "an understanding . . . that the 1991 CBA did *not* remain in full force and effect by way of the 1991 Participation Agreement," but terminated on December 31, 1993. The court then granted summary judgment to General on the Fund's claims for overdue pension payments. As for General's counterclaim, the court granted summary judgment for the Fund, holding that because "[General's union] employees realized a significant increase in the pension benefits paid to them," the Trustees did not act arbitrarily or capriciously in denying General a refund. Both parties appealed.

## II. ANALYSIS

We review de novo a district court's decision to grant summary judgment, affirming where the evidence, viewed in the light most favorable to the non-movant, demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Fund argues that the court erred because: (1) the 1991 Participation Agreement obligated General to contribute; (2) the Certification Clause obligated General to contribute; and (3) the court failed to rule on the Fund's motion to strike. We hold that neither the 1991 Participation Agreement nor the Certification Clause obligated General to contribute after the 1991 CBA expired, and the court's failure to rule on the motion to strike is harmless error.

### A.

The Fund contends that the 1991 Participation Agreement required General to contribute after the 1991 CBA expired. Citing a suit decided in its favor, *Central States Pension Fund v. Behnke, Inc.*, 883 F.2d 454 (6th Cir. 1989), the Fund argues that federal courts can "enforce contractual obligations to contribute . . . established by independent, unexpired trust and participation agreements, which, by their terms, extend beyond the expiration of a CBA," *id.* at 464. *Behnke*, however, is inapposite.

First, in *Behnke*, the duty to contribute continued after a CBA expired because employer Behnke entered into a Participation Agreement and Trust Agreement during the *negotiation* period for a new CBA. The Participation Agreement in *Behnke*, effectively the same as the one involved here, incorporated language from the Trust Agreement providing that "[t]he obligation to make such contributions shall continue during periods when the collective bargaining agreement is being *negotiated*." *Id.* at 461 (emphasis added). In other words, the Participation Agreement *alone* did not extend Behnke's duty to contribute—the Participation Agreement became significant only because it incorporated the Trust Agreement's provision for continuing contributions during negotiations for a new CBA. *See id.* ("The *Trust Agreement* incorporated into the Participation Agreement extends the obligation.") (emphasis added). General entered into no such negotiations after the 1991 CBA expired.

Second, unlike the Participation Agreement in *Behnke*, the 1991 Participation Agreement can be understood only by reference to the contemporaneously signed 1991 CBA. General and Local 164 signed the 1991 CBA and 1991 Participation Agreement on the same day, unlike the Participation Agreement in *Behnke*, which Behnke and the union signed after one CBA expired and before the next became effective.[1] The fact that General signed the two documents on the same day

---

[1] After a CBA expired on March 31, 1982, Behnke and the local union immediately began negotiations for a new CBA. *Behnke*, 883 F.2d at 456–57. Effective April 1, 1982, Behnke and the union entered into an Interim Agreement that expired on April 1, 1985. On June 9, 1983, Behnke and the union signed the Participation Agreement incorporating the Fund's Trust Agreement, which extended the duty to contribute until Behnke and the union signed a

supports the view that the 1991 Participation Agreement cannot be understood apart from the 1991 CBA. In fact, the terms of the 1991 Participation Agreement depend wholly on the 1991 CBA. The 1991 Participation Agreement sets forth contribution rates dictated by the 1991 CBA, defines covered employees as those employed under the terms of the 1991 CBA, and defines an employer as one bound by the 1991 CBA. After the 1991 CBA expired, the orphan 1991 Participation Agreement became incognizable. *Cf. Laborers Health & Welfare Trust Fund v. Leslie G. Delbon, Inc.*, 199 F.3d 1109, 1111 (9th Cir. 2000) ("[A] contract to contribute to a trust fund of a Union with which [the employer] has no ongoing collective bargaining agreement makes no sense.") (citation and internal quotation marks omitted). As a result, the 1991 Participation Agreement did not obligate General to contribute after the 1991 CBA expired.

### B.

We likewise find lacking the Fund's contention that the Certification Clause included in its monthly bills extended General's duty to contribute. For support, the Fund points to a Seventh Circuit decision and an unpublished decision from the Northern District of Illinois. In *Bricklayers Local 21 v. Banner Restoration, Inc.*, 385 F.3d 761 (7th Cir. 2004), the Seventh Circuit stated: "[W]e consider the certification language on the monthly reports and the accompanying payments as entitled to *some weight* in an analysis of whether Banner's conduct manifested intent to abide by the collective bargaining agreement." *Id.* at 767 n.3 (emphasis added). In *Banner*, however, the court considered certification language only because the employer did not sign a CBA but conducted itself as though a CBA existed. In any event, the *Banner* court observed that the Seventh Circuit is undecided as to whether certification clauses are "entitled to some weight . . . and maybe a lot," *id.* (quoting *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 650 (7th Cir. 2001)), or are only "weak evidence," *id.* (quoting *Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662, 668 (7th Cir. 2003)).

The Fund also cites *Central States Pension Fund v. Kabbes*, No. 02 C 1809, 2004 WL 2644515 (N.D. Ill. Nov. 18, 2004), where the Northern District of Illinois reasoned that "[e]ven when the Defendants did not sign the reporting forms, they manifested their intent to be bound by the Certification Clause by completing the reporting forms and submitting their checks . . . ." *Id.* at *17. Although *Kabbes* allows certification clauses to bind an employer, the *Kabbes* court relied in part on the *Behnke* decision and, in doing so, read *Behnke* too broadly. *See id.* at *14 (citing *Behnke* despite *Behnke*'s silence on whether certification clauses could extend an employer's duty to contribute). No Sixth Circuit case law supports the Fund's contention. Given the paucity of pertinent Sixth Circuit precedent—as well as the equivocal weight the Seventh Circuit gives certification clauses—we conclude that the Certification Clause did not obligate General to contribute after the 1991 CBA expired.

### C.

Finally, the Fund contends that the district court erred by not ruling on its motion to strike. Generally, district courts should resolve discovery motions before granting summary judgment. *Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 673 (6th Cir. 2006). But if a court can rule on a summary judgment motion without resorting to information contained in a discovery motion, the failure to rule is harmless error. *Id.* The Fund's motion to strike argued that, in its response brief to the Fund's summary judgment motion, General offered affirmative defenses based on new evidence. The evidence at issue included General's reports on employee changes, the significant drop in contributions after the 1991 CBA expired, the lack of an increase in General's pension contribution rate over a thirteen-year period, and the Fund's contact with General concerning

---

new CBA in November 1985. *Id.* at 457, 461–62.

untimely payments. Reviewing the record as a whole, we conclude that even were the district court to strike the disputed portions, the court would reach the same resolution of the summary judgment motion. The failure to rule on the Motion to Strike is therefore harmless error.

### III. CONCLUSION

Because the district court properly granted summary judgment for General as to the Fund's claim for overdue pension contributions, we affirm.